## FARIS v. UNITED STATES.

### No. 4294.

United States Court of Appeals
Tenth Circuit.

Oct. 24, 1951.

Richard F. Mullins, Wichita, Kan. (Lester C. Arvin and Milo M. Unruh, Wichita, Kan., on the brief), for appellant.

Edmund B. Clark, Washington, D. C., (A. Devitt Vanech, Asst. Atty. Gen., Lester Luther, U. S. Atty., Topeka, Kan., and John F. Cotter, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before BRATTON, MURRAH and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

The United States brought this action in the United States District Court for the District of Kansas to recover rent

due from the defendant under a written interim lease and an alleged oral lease entered into by and between the parties. The defendant answered and admitted the rent due under the interim lease but denied that any oral lease was entered into between the parties. By way of a counterclaim the defendant sought to recover its expense in removing its property from the leased premises and in reinstalling such property upon other premises under the provisions of the National Security Clause attached to the lease. The trial court entered judgment in favor of the United States for the rentals claimed and dismissed the counterclaim of the defendant. The defendant appeals.

The defendant was engaged in selling, servicing and manufacturing aircraft parts and leased the premises in question which were a portion of a war reserve plant owned by the United States. The defendant took possession under the terms of a written lease dated June 8, 1947. The term of the lease was one year and contained a National Security Clause as provided for in 50 U.S.C.A. § 452(c).[1] This clause gave the Secretary of War or the Secretary of the Navy the right to activate a war reserve plant when the national defense so required. The lease was not terminated prior to the expiration of one year from its date and the defendant continued to occupy and use the premises until January 29, 1949. No rentals were paid after December 8, 1947. Upon admissions made at a pretrial conference, the court sustained a motion for a summary judgment for the rentals claimed. A reversal of that portion of the judgment is not urged here. Thereafter, the court heard the evidence and arguments on defendant's counterclaim and disallowed it.

The only question raised on this appeal is whether the court erroneously held that the National Security Clause did not give the defendant the right to recover the reasonable costs of moving and reinstalling his machinery, equipment and improvements.

1. Pertinent portions of the National Security Clause are:

"National Security Clause.
(Lease.)
*    *    *    *    *    *

"2. A dormant estate for a period of twenty years is reserved by the Government, which dormant estate may be activated for one or more periods not exceeding five years duration each.
*    *    *    *    *    *

"4. The dormant estate may be activated by the Secretary of War or the Secretary of the Navy, as the case may be, at any time prior to the expiration of the twenty-year period, by written instructions to the Lessee, whenever, in the opinion of the Secretary of War or the Secretary of the Navy, considerations of national defense so require. In the event the dormant estate is so activated, the Government shall have the right to full possession and use of the plant.
*    *    *    *    *    *

"6. The Lessee, upon receipt of written notice that the dormant estate has been activated, will immediately proceed to remove improvements, fixtures, alterations, machinery and other equipment, in accordance with the directions and instructions in such notice. Such action will be completed in the shortest possible time but in no case in excess of 120 days from the date written notice is received. Thereafter, the Lessee will immediately vacate and peaceably surrender possession of the plant to the Government.

"7. In the event the dormant estate is activated, the Government will pay to the Lessee:

"a. Reasonable costs and expenses in connection with restoring the plant to its condition at the time of lease or in performing other work, all in accordance with the directions and instructions received from the appropriate Secretary.

"b. Estimated reasonable costs of reinstalling the Lessee's machinery, equipment and improvements.

"c. Fair compensation for loss incurred on work in process in the plant which cannot be completed due to the activation of the dormant estate.

"The Government will not compensate the Lessee for losses and damages other than herein provided.

"8. During the period or periods that the dormant estate is activated, the Government will pay the Lessee compensation at a rate to be fixed by the Secretary of War or the Secretary of the Navy, which rate shall not be in excess of the prevailing normal rental for similar industrial properties."

The United States, at the close of World War II, owned many industrial plants and a national reserve of machine tools and industrial manufacturing equipment. Congress, in order to provide a comprehensive and continuous program for the future safety and defense of the United States whereby an essential nucleus of such government-owned properties would be available for immediate use to supply the needs of the armed forces in time of national emergency or in anticipation thereof, adopted the National Industrial Reserve Act.[2]

By the terms thereof,[3] the Secretary of Defense was empowered to formulate a National Security Clause which was defined as "those terms, conditions, restrictions, and reservations * * * for insertion in instruments of sale or lease of property, determined * * * to be a part of the national industrial reserve, which will guarantee the availability of such property for the purposes of national defense at any time when availability thereof for such purposes is deemed necessary by the Secretary of Defense."[4]

The defendant contends that because the written lease anticipated a holding over with the assent of the United States, and gave the conditions under which the holding over tenancy was to be controlled,[5] the defendant became a month to month tenant and the parties were bound by the same terms and conditions of the interim lease including the National Security Clause during the hold over period. The clause upon which the defendant bases his counterclaim was inserted for the relief of lessees who might be dispossessed in advance of the expiration date of their leases. The original term of the lease in this action had expired; thereafter the defendant was a month to month tenant under the express provisions of the lease,[6] and the United States had the right to terminate this tenancy by giving the required notice.

We need not decide whether the National Security Clause was effective as to the period which the premises were occupied after the lease expired. The defendant was on a month to month basis, and the occupancy, with proper notice, could be terminated at the end of any calendar month. On November 18, 1948, the defendant was notified that the United States required possession of the premises by December 31st of that year and that the right of occupancy was terminated as of that date. This notice was adequate.[7]

Assuming that the lease, including the National Security Clause, was effective during the hold over period, the United States had the right to terminate the lease at the end of any month and when this was done the defendant was not entitled to the benefit of the clause any more than he would have been had he vacated the property at the end of the primary term. The purpose of incorporating the clause into the lease was to protect the lessee from damages if the leased property was activated during the term of the lease. No right existed after the term had expired.

In addition, there was no activation of the leased premises as contemplated by the National Industrial Reserve Act or the National Security Clause. The lease had expired, negotiations for a new lease had

2. 50 U.S.C.A. § 451 et seq.

3. 50 U.S.C.A. § 453(2).

4. 50 U.S.C.A. § 452(c).

5. The applicable portion of the hold over provision is:
"In event Lessee shall hold over after the expiration of the term above demised for a sufficient period of time to create a renewal of this interim lease by operation of law, then any renewal of future right of possession not evidenced by an instrument in writing, executed and delivered by Lessor, shall be a tenancy from calendar month to calendar month and for no longer term."

6. 36 Am.Jur., Landlord and Tenant, Sec. 936, and cases cited.

7. At common law a tenancy from month to month could be terminated by giving a month's notice. 32 Am.Jur., Landlord and Tenant, Sec. 996.
The law of Kansas requires thirty days notice in writing, Kan.G.S.1949, Sec. 67–504.
Gunter v. Eiznhamer, 165 Kan. 510, 196 P.2d 177.

failed, the defendant had failed to pay the rent for a long period of time, and the United States desired to lease it to other tenants.

Judgment is affirmed